## S91A0296. KIMMEL v. THE STATE.
(404 SE2d 436)

CLARKE, Chief Justice.

Keith David Kimmel was convicted of murder and was sentenced to life imprisonment.[1] In this appeal he asserts that his trial should have been barred by the constitutional guarantee against double jeopardy, that the trial court erred in refusing to accept the jury's initial verdict and that the trial court erred in failing to respond adequately to the jury's requests for instructions. We find no error and affirm.

Keith Kimmel, Ray Culberson, Richard Harrison and Michael Vance were roommates. Although the roommate arrangement appeared friendly, Kimmel, Culberson and Harrison suspected Vance of being a police informant. They began to plan to kill Vance. On July 28, 1988, Vance disappeared. His body was discovered in October in a wooded area of Paulding County.

After the body was discovered, Culberson began to get nervous and decided to go to the police. At trial Culberson testified that he and Kimmel lured Vance to take a drive with them under the pretense of going to a marijuana field that was ready to harvest. He said that Kimmel strangled Vance while in the car. He and Kimmel then dragged Vance into the woods and Kimmel hacked him with a machete to make sure he was dead. Culberson also admitted that he beat Vance with a billy club. Harrison testified at trial that he was present during the planning of the murder. But, he said that he was not present during the actual deed. He admitted that his car, his billy club and his machete were used to carry out the murder, but by the time he was questioned he had sold the car and the weapons to Kimmel. Culberson and Harrison received favorable plea bargains in ex-

---

[1] The crime occurred on July 28, 1988. Appellant was indicted on May 19, 1989. His first trial resulted in a hung jury on December 11, 1989. He was retried on May 26, 1990 and was convicted of murder on May 29, 1990 and sentenced to life imprisonment the same day. Appellant filed a motion for new trial and judgment notwithstanding the verdict which were denied on September 7, 1990 and October 16, 1990. The notice of appeal was filed November 9, 1990. The case was docketed in this court December 30, 1990. The case was submitted for decision without oral argument on February 12, 1991.

change for their testimony against Kimmel. Their testimony was corroborated by the testimony of one of Kimmel's co-workers, who said that Kimmel had bragged about "killing a narc."

Kimmel's first trial resulted in a hung jury. After the second trial, the jury was provided with a verdict form with two sections, one that stated, "We the jury find the defendant guilty" and one that stated "We the jury find the defendant not guilty." After deliberating for some time the jury reported that they had reached a verdict. When they returned to the courtroom the foreperson delivered the verdict form on which they had marked out the words "not guilty" and replaced them with the word "undecided." The court told the jury that their verdict was not correct and that they must continue deliberating to select one of the two possible verdicts provided on the form.

The jury continued deliberating. Later, it sent out a note that stated, "We appear to be unable to reach a common decision." On being called into the courtroom, the foreperson expressed that the jury was confused by the definition of murder. The court decided to let the jury go home for the night and to recharge on the definition of murder in the morning. The next morning, after the court recharged the jury on the definition of murder, some jurors questioned the court about whether mere knowledge of the crime would be sufficient to convict for murder. The court responded by repeating the charge defining the offense of murder. The court then directed the jury to continue deliberating. Defendant's lawyer objected to the fact that the court did not give direct answers to the jury's questions.

Later, the court called the jury back into the courtroom to inquire whether they were making any progress in their deliberations. The foreperson reported that the vote had not changed since early that morning. The court then recharged the jury on the law regarding parties to the crime and instructed the jury that "mere association by one with other persons involved in the commission of a crime, without more, will not of itself authorize a jury to find such person guilty of consent in the commission of the crime unless the evidence shows beyond a reasonable doubt that such person aided and abetted in the actual perpetration of the crime or participated in the criminal endeavor." The court proceeded to deliver a full *Allen* charge and directed the jury to continue deliberating.

Sometime later, the jury sent out another note. It asked, "If he knew about the murder, does that make him guilty[?] Or does he have to take part of the actual planning and participation in the actual murder[?]" The trial court responded by giving again, in the exact same language, the charges on "mere association" and "parties to the crime." The court then directed the jury to continue deliberating.

Finally, the jury returned a verdict of guilty. When the jury was polled, however, two jurors responded to the question "Is the verdict

your verdict?" by saying "Yes, because he [Kimmel] knew about it." There were no objections to the jury poll. The court dismissed the jury and imposed sentence.

1. Kimmel first argues that his trial was barred by the constitutional guarantee against double jeopardy. He asserts that the evidence presented in his first trial was insufficient to prove venue beyond a reasonable doubt and the judge in the first trial erred in denying his motion for a directed verdict on that ground.

Assuming without deciding that the evidence presented in the first trial was insufficient to prove venue beyond a reasonable doubt, a second trial is not barred by the constitutional guarantee against double jeopardy. The failure to establish venue does not bar re-trial in a court where venue is proper and proven. *Beard v. State*, 193 Ga. App. 877 (389 SE2d 384) (1989); *Hernandez v. State*, 182 Ga. App. 797 (357 SE2d 131) (1987); *Patterson v. State*, 162 Ga. App. 455 (291 SE2d 567) (1982). This is true for two reasons: (1) If a defendant is tried in the wrong venue, that trial court lacks jurisdiction of the offense so that no jeopardy attaches. *Schiefelbein v. State*, 258 Ga. 623 (373 SE2d 354) (1988), cert. denied 489 U. S. 1026 (109 SC 1156, 103 LE2d 215) (1989). And, (2) evidence of venue does not go to the guilt or innocence of the defendant; insufficient evidence of venue is a trial error that does not bar re-trial under *Burks v. United States*, 437 U. S. 1 (98 SC 2141, 57 LE2d 1) (1978) and its progeny. *Patterson*, supra at 457; *Ricketts v. Williams*, 242 Ga. 303 (248 SE2d 673) (1978), cert. denied 439 U. S. 1135 (99 SC 1059, 59 LE2d 97) (1979). Thus, even if the first trial was held in the proper venue and the prosecution failed to prove venue beyond a reasonable doubt, re-trial in the same venue is not prohibited.

2. Kimmel next asserts that the trial court erred in failing to accept the jury's first verdict. He contends that the verdict form that stated, "We the jury find the defendant undecided," amounted to an acquittal of the defendant. We disagree. The trial court interpreted the verdict form to mean that the jury was either not unanimous or had not decided yet whether defendant was guilty or not guilty. That interpretation was reasonable and the instruction to continue deliberating was proper. See, e.g., *Beardon v. State*, 159 Ga. App. 892, 895 (285 SE2d 606) (1981); cf. *Maltbie v. State*, 139 Ga. App. 342 (228 SE2d 368) (1976).

3. Kimmel next argues that the trial court erred in failing to answer the certain jurors' questions directly. More specifically, he contends that when the jury or individual jurors asked, "If he knew about the crime, does that make him guilty of murder?" the court should have stated simply, "No."

We have held that "when the jury requests the court to recharge them on any point, it is the court's duty to do so [cits. omitted]."

*Edwards v. State*, 233 Ga. 625 (212 SE2d 802) (1975). It is further the obligation of the court to instruct the jury in plain, clear language. *Leonard v. State*, 133 Ga. 435 (66 SE 251) (1909). Even when the charge relies on the exact language of the law, it must be calculated to enlighten rather than confuse the jury. *Whitehead v. State*, 107 Ga. App. 15 (128 SE2d 552) (1962). We have never held, however, that the court must engage in a question and answer session with the jury or instruct the jurors individually on how to apply the law to the facts. In this case, it might not have been an error for the court to answer the jury's questions directly, that is, without relying on a pattern charge. However, the charges as repeated were legally sufficient. Further, Kimmel did not object to the recharge or submit an alternate request to charge. Under these circumstances the court did not commit error by relying on the pattern charges and charges submitted by the parties.

4. Kimmel also argues that the court erred in accepting the jury verdict, because during the poll of the jury two jurors indicated that the verdict was their verdict "because he [Kimmel] knew about it." He argues that verdict was not unanimous because two jurors based their verdict on facts that are insufficient to support a conviction for murder.

There was no lack of unanimity among the jurors in this case. Each juror affirmed the verdict as his or her own. Cf. *White v. Seaboard C.L.R. Co.*, 139 Ga. App. 833 (299 SE2d 775) (1976). Moreover, this is not a case in which a juror expressed reservations or doubts about the verdict. See, e.g., *Hill v. State*, 187 Ga. App. 150 (369 SE2d 790) (1988). Rather, in this case, the jurors' remarks during the jury poll indicate a possible misunderstanding of the law. We cannot ascertain from the remarks in the record to what extent the verdict rested on a misunderstanding of the law. Moreover, this court has traditionally resisted inquiring into a jury's thought processes. *Milam v. State*, 255 Ga. 560 (341 SE2d 216) (1986); see also *United States v. Powell*, 469 U. S. 57, 67 (105 SC 471, 83 LE2d 461) (1984). Although the trial court could have questioned the jurors further, in the absence of any request or objection, it was not an error to refrain from inquiring further. Kimmel did not object or move for further deliberations after the polling of the jury, and thereby waived any objection to the verdict. *Hanson v. State*, 258 Ga. 564 (372 SE2d 436) (1988).

5. Finally, the evidence adduced at trial, when viewed in a light most favorable to the verdict, would authorize a rational trier of fact to find the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 24, 1991 —
RECONSIDERATION DENIED JUNE 20, 1991.

*Jeffrey B. Talley, Michael W. Lord,* for appellant.

*W. A. Foster III, District Attorney, Thomas V. Driggers, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary H. Hines,* for appellee.